11THIB ODEAUX, J.,
dissenting.
It is a generally accepted principle that the district attorney is the only person granted the authority to contract in a plea agreement. State v. Howard, 448 So.2d 150 (La.App. 1 Cir.1984), writ denied, 449 So.2d 1355 (La.1984). It has been held that a trial court has no authority to enter into an ex parte agreement with a defendant or to enforce its terms. See State v. McFarland, 578 So.2d 1014 (La.App. 4 Cir.1991). However, “[e]ven if there was no plea bargain with the State, if defendant justifiably believed there was, and pled guilty in part because of that justifiable belief, the guilty plea was not knowingly made. In such a case the plea must be set aside and defendant allowed to plead anew.” Id. at 1016 (citations omitted).
12The record reveals that Ms. Moree, along with her attorney, Mr. Jordan, justifiably relied upon the representations of the court that she would receive a suspended five-year sentence and a $10,000.00 fine. Mr. Jordan testified that the letter dated August 29, 1997 memorialized the oral agreement he made with Judge de-Mahy.
Mr. Jordan never received a response from either Judge deMahy or Assistant District Attorney Phil Haney, who received a copy of the letter. Judge de-Mahy’s silence led Mr. Jordan to believe that the terms of the agreement were appropriately set forth in the letter, and that the agreement would be executed as such. Mr. Jordan testified at the evidentiary hearing that before reducing the terms to writing, he repeated the agreement to Mr. Haney, who said that for the record, he would not be able to go along with the agreement, and he would have to oppose it at a sentencing hearing. Mr. Jordan then communicated Mr. Haney’s sentiments to Judge deMahy. The judge told Mr. Jordan not to worry because, according to Mr. Jordan’s testimony of his conversation with the judge, “Phil [Haney] often went through sentencing hearings and it was just his way.” As a result of the conversations with Judge deMahy and Mr. Haney, Mr. Jordan was under the impression that if Ms. Moree entered a guilty plea, she would receive a suspended five-year sentence and a $10,000.00 fine.
*164 This is precisely what Mr. Jordan relayed to Ms. Moree. He indicated to her that this was basically a “done deal.” On the original plea date, Ms. Moree was unable to attend because of car trouble which left her stranded in Beaumont, Texas. The matter had to be further delayed during the time that Mr. Jordan was in a legislative session. During these delays, Mr. Jordan did not receive any communications from Judge deMahy or from Mr. Haney. When the sentencing [shearing was finally conducted, Ms. Moree, as a result of Mr. Jordan’s assurances to her and to her parents, pled guilty and answered all the questions in the Boykin colloquy, and signed a Boykinization form in such a manner as to establish that no plea bargain agreement had been reached as inducement for her to plead guilty. Ms. Moree testified at the evidentiary hearing that she had been told by Mr. Jordan that the Boykinization and sentencing hearing were formalities, or a “dog and pony show” and that he had the assurance from Judge deMahy that she would receive a suspended sentence with no time in jail.
Judge deMahy, however, was unable to recollect the specifics of his interactions with Mr. Jordan regarding Ms. Moree’s case. He testified at the evidentiary hearing on December 2, 1998 that he did not recall receiving the August 29 letter from Mr. Jordan nor did he remember giving Mr. Jordan a firm commitment on the sentence that he was going to impose on Ms. Moree. He does not dispute the accuracy of the letter; rather, he could not recall receiving it. Judge deMahy did, however, admit that in the past, he had promised defense attorneys what the sentence would be prior to the sentencing of their clients. According to the judge, it was not his intent to convey to Mr. Jordan that regardless of the information produced at the sentencing hearing that Ms. Moree would receive a suspended sentence.
The record is void of evidence that Judge deMahy notified Mr. Jordan that conditions were going to be placed on the plea agreement. The judge’s silence to Mr. Jordan’s recommendation was acceptance of the agreement as it was discussed. See La.Civ.Code art. 1942.
A plea of guilty is void and should be vacated when a plea agreement induces the defendant to plead guilty or when the defendant reasonably believes he has entered into a plea agreement and the terms of the bargain are not fulfilled. State v. Holmes, 475 So.2d 1057 (La.1985); State v. Jones, 546 So.2d 1343 (La.App. 3 Cir.1989); State v. Jordan, 98-101 (La.App. 3 Cir. 6/3/98); 716 So.2d 36. It is unmistakable that Ms. Moree reasonably relied on the communications between the trial court and Mr. Jordan that she would receive a suspended sentence if she pled guilty. Consequently, Ms. Moree must be allowed to withdraw her plea of guilty to the charge of possession with intent to distribute marijuana.
The State contends that during the Boy-kin examination, Ms. Moree admitted that no promises or threats had been made to induce her to plead guilty, and that Ms. Moree signed the Boykinization form; therefore, her plea was appropriately entered. The State also indicates that Ms. Moree’s attorney, Mr. Jordan, was present with her during her guilty plea, and he made no interruption during the plea nor did he object to the sentence. Therefore, this court should not oblige Ms. Moree by setting aside her sentence. I disagree with both contentions.
The State concludes that by the defense’s inaction, Ms. Moree has no basis to object to the breach of the plea bargain. However, I find that Ms. Moree duly attacked her guilty plea by seeking post-conviction relief on the ground that her plea was constitutionally infirm. See State v. Hayes, 423 So.2d 1111 (La.1982).
State v. Neitte, 363 So.2d 425 (La.1978); State v. Jones, 398 So.2d 1049 (La.1981); and State v. Dixon, 449 So.2d 463 (La.1984) add additional for my position.
*165 In Neitte, the defendant was charged with simple robbery. Pursuant to a plea bargain with the district attorney, he pleaded guilty to a reduced charge of theft of property valued between $100.00 and $500.00. Neitte was sentenced to serve two years at hard labor. The District Attorney contended that no one in his office promised to make a recommendation of probation to the sentencing judge, and that | ¡¡the defendant acknowledged during the Boykinization that no promises had been made to him to induce him to plead guilty, other than the reduction of the charge against him. In the sentencing hearing, Neitte introduced a letter addressed to him from his attorney dated June 7, 1977. The letter outlined the lawyer’s discussion of Neitte’s case with the district attorney and a proposed plea bargain. Neitte argued that he entered the guilty plea in exchange for the district attorney’s recommendation of supervised probation. He instead received two years at hard labor. After finding that Neitte was denied due process of law because the State failed to comply with the representation that induced his guilty plea, the supreme court remanded Neitte’s case, with instructions, to the district court to vacate Neitte’s guilty plea and sentence and to allow him to reinstate his plea of not guilty.
The defendant in Jones pled guilty to attempted distribution of marijuana after a plea bargain with the State was negotiated, reducing the charge from distribution of marijuana. He was sentenced to five years imprisonment at hard labor and fined $7,000.00. Jones alleged that his guilty plea was induced in part by the State’s promise that he would receive no jail sentence. During the original sentencing, Jones answered in the negative when asked if he had been promised any particular sentence. When the sentence was imposed, neither Jones nor his attorney objected to the sentence. Instead, a written motion was filed by the defense several days later. The court in Jones found that the bargain gave the State “a sure conviction in a case in which the state’s main witness was out of the country. What benefit went to the defendant is difficult to find.” Jones at 1053. A new sentencing hearing was ordered because fault in the deficiency of the records was on both the prosecution and the defense, and the sentence was again set aside. The court concluded that “[i]f there was no such plea bargain, but defendant justifiably believed there was, and pleaded Uguilty in part because of that justifiable belief, the guilty plea was not knowingly made and must be set aside, and defendant must be allowed to plead anew.” Id.
In Dixon, the defendant originally pled not guilty to one count of aggravated burglary and one count of simple burglary. The State later reduced the charges to two counts of simple burglary, and Dixon withdrew his not guilty pleas and entered guilty pleas. The court imposed the maximum sentence, sentences of twelve years at hard labor on each count, with the sentences to run consecutively. Dixon, himself, immediately objected to the sentence. Dixon contended that his guilty pleas were entered only because the prosecution and his own attorney had represented to him that he would receive sentences considerably less than twelve years on each count, and that the sentences would be concurrent. Dixon admitted that in his oral Boykin colloquy with the trial court, he affirmatively responded when he was asked if he understood the penalties for the crimes to which he was pleading. He negatively responded to the inquiry of whether he had been promised anything in return for his guilty plea. A written waiver of rights form was signed by Dixon in which he gave the same responses. Dixon contended that these answers were given on the advice of his attorney who informed him that the questions and answers were merely procedural for the purpose of entering his guilty plea and they would have no effect on his plea bargain agreement. The supreme court concluded that the fact that the trial court, in its discretion, *166 “sought to amend the sentence to provide for the concurrent terms Dixon said he was promised certainly lends credence to his assertions,.... ” Id. at 465. The case was remanded for an evidentiary hearing because the record before the court was insufficient. If the evidence adduced at the hearing did not support Dixon’s contention that a plea bargain agreement existed, but |7he justifiably believed there was and pled guilty in part because of that justifiable belief, then his guilty plea was not knowingly entered and must be set aside.
In this case, the record clearly shows that although Ms. Moree did not admit that she had been induced in any manner, she justifiably believed that by pleading guilty to possession of marijuana with intent to distribute, she would be placed on five years probation and would not be imprisoned. As in Dixon, the signing of the Boykinization form did not negate Ms. Moree’s certainty that this was merely a formality, just as Mr. Jordan had assured her that the sentencing hearing on September 23, 1997 was merely a formality or a “dog and pony show” that she had to undergo.
Ms. Moree’s attorney took the initiative to schedule the date of Ms. Moree’s sentencing. As a practical consideration, it is difficult to imagine an attorney and a criminal defendant desirous of and initiating a court proceeding which will result in the imposition of incarceration at hard labor. Common sense defies this sort of logic and, as the late Justice William O. Douglas once observed, “common sense often makes good law.”
Ms. Moree justifiably believed that she entered into a plea bargain agreement created by her attorney, Mr. Jordan, and the presiding trial judge, Judge deMahy. I, therefore, conclude that her guilty plea was constitutionally infirm, and that she was denied due process in that her plea was not given freely and knowingly. Her conviction and sentence should be set aside.
For the foregoing reasons, I respectfully dissent.